IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**DWDUBBELL ARKANSAS, LLC**                              **PLAINTIFF/COUNTER-DEFENDANT**

**V.**                              **CASE NO. 5:20-CV-05103**

**JAKE M. BUSHEY**                              **DEFENDANT/COUNTER-PLAINTIFF**

**JAKE M. BUSHEY**                              **THIRD-PARTY PLAINTIFF**

**V.**

**DAVID W. DUBBELL**                              **THIRD-PARTY DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action arises out of a contract dispute between Plaintiff/Counter-Defendant DWDubbell Arkansas, LLC ("DWD") and Defendant/Counter-Plaintiff Jake M. Bushey. Bushey also filed third-party claims against David Dubbell, the owner of DWD. Two motions in this matter are ripe for consideration: DWD and Dubbell's Motion to Strike (Doc. 13) and Motion to Dismiss for Failure to State a Claim (Doc. 15). For the reasons set forth below, the Court **DENIES** the two Motions (Docs. 13 & 15).

**I.   BACKGROUND**

As DWD and Dubbell's Motion to Dismiss targets Bushey's claims, the following facts are taken from Bushey's Answer and Counterclaim (Doc. 6) and are assumed to be true. This case is about Bushey's compensation for his time as an employee of DWD and the enforceability of an agreement signed by Dubbell and Bushey in December 2014 (the "Agreement"). Dubbell was the President, CEO, and owner of Pel-Freez Arkansas,

1

LLC ("Pel-Freez") (Doc. 6, p. 7).[1]  In 2014, Pel-Freez was on the cusp of bankruptcy, and Dubbell was advised to hire Bushey as a turn-around expert.  *Id.*  Hoping to save Pel-Freez from bankruptcy, Dubbell hired Bushey as Chief Operating Officer in June 2014.  *Id.*  To memorialize the terms of Bushey's compensation, he and Dubbell signed the Agreement.  The Agreement begins by stating that it "defines the quantitative values to be used in your ongoing compensation as the Chief Operating Officer."  (Doc. 6-1, p. 1).  It then goes on to state:

> [W]e have agreed that a definitive Compensation Plan will be prepared and reviewed in January of each year.  This Plan will be needed to define details of your responsibilities and authorities . . . and reaching clarity in regard to the many needed Compensation Plans terms to cover when possible future events, such as your resignation, disability, sudden death, company bankruptcy, etc.

*Id.*  It then goes on in more detail, stating that the "[f]ollowing are outlines of basic agreement, confirming our quantitative details of our discussion to date for your ongoing, at will employment with Pel-Freez . . . ."  *Id.*  As is relevant to the present dispute, the Agreement states that Bushey would receive

> a benefit upon sale or merger of PEL-FREEZ equal to 12%, net of all transaction costs, of the appreciation in company value between 6/30/14 and date of sale, with the value of the company stipulated at 6/30/14 to be zero and that 12% benefit gradually vesting by 2 percentage points each 6 months, starting 12/31/14 and reaching the agreed 12% on 6/30/17.

*Id.* (hereafter, the "Sale Benefit Clause").  Finally, the Agreement states that the prior terms, including the Sale Benefit Clause, "define our basic agreement for your ongoing compensation, with our both [sic] understanding that full definition to reside within the yet to be prepared Compensation Plan."  *Id.*

---

[1]  Pel-Freez Arkansas, LLC has since changed its name to DWDubbell Arkansas LLC, the Plaintiff/Counter-Defendant in this action.

Bushey alleges that Dubbell told him that if he could save Pel-Freez, he would be rewarded. (Doc. 6, p. 7). Bushey asserts that he did indeed save Pel-Freez from bankruptcy and even procured a buyer for Pel-Freez, but Dubbell decided not to sell Pel-Freez due to the successful turn-around. *Id.* Eventually, Bushey resigned from his position in late 2016, at which point he had accrued 10% of the benefit set forth in the Agreement. *Id.* at p. 8.

According to Bushey, on March 31, 2020, Pel-Freez sold its assets to an undisclosed buyer, and Pel-Freez publicized the sale on its public website, which is how Bushey learned of the sale. *Id.* Upon learning of the sale, Bushey emailed Dubbell and asked when he would receive his sale proceeds. *Id.* Bushey eventually sent Dubbell and Pel-Freez a demand letter requesting payment (Doc. 6-3), and Dubbell's attorney confirmed receipt of the letter and requested until June 12, 2020, to respond. (Doc. 6-4, p. 2). In a subsequent exchange between the parties' attorneys, Dubbell's counsel stated it was their intent "to propose a cash payment" and that additional time was needed to determine and document the amount. *Id.* at p. 1. DWD instead filed its Complaint for declaratory relief on June 11, 2020.

In its Complaint, DWD seeks a declaration that the Agreement "was not, and currently is not, a contractual, legal and/or other recognizable basis for [Bushey] to demand certain moneys and confidential information from [DWD]." (Doc. 2, p. 5). Bushey answered and lodged counterclaims for breach of contract and promissory estoppel against DWD and identical third-party claims against Dubbell in his individual capacity. (Doc. 6). DWD and Dubbell then moved under Federal Rule of Civil Procedure 12(f) to strike the portions of Bushey's claims that reference the communication between the

3

parties' attorneys, and they also moved under Rule 12(b)(6) to dismiss Bushey's claims on the grounds that he has failed to plead sufficient facts to show that he is entitled to relief.

## II. LEGAL STANDARD

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are viewed with disfavor and are infrequently granted. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, at 394 (3d ed. 2004). Because Rule 12(f) motions are often used as a delay tactic, there is general judicial agreement "that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." 5C Wright & Miller, § 1380, at 436.

As for a Rule 12(b)(6) motion to dismiss, to survive such a motion, a pleading must provide "a short and plain statement of the claim showing that [the claimant] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the pleading's factual allegations as true. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* Finally, documents necessarily embraced by the pleading—such as "exhibits attached to the [pleading] whose authenticity is unquestioned"—may be considered by the Court without converting a Rule 12(b)(6) motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

### III. DISCUSSION

#### A. Motion to Strike

DWD and Dubbell ask the Court to strike the portions of Bushey's claims that describe email communications between the parties' counsel. They argue that such communications were sent as part of settlement negotiations and are therefore barred by Federal Rule of Evidence 408. In support, they present the declaration of Jack Butt, who acted as counsel for DWD in the email communications with Bushey's attorney. Mr. Butt avers that his communications with Bushey's counsel "were entirely related and in response to Mr. Bushey's demand for compensation, as well [as] his threats of imminent litigation" and at no time did he "concede or imply" that DWD or Dubbell were liable to Bushey. (Doc. 13-1, pp. 1–2). In response, Bushey argues that Rule 408 is inapplicable

5

to pleadings and that, even if it does apply, the communications at issue do not fall within Rule 408's ambit.

Under Rule 408(a), settlement-negotiation evidence is inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." However, such evidence may be admissible for other purposes, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). As DWD and Dubbell note, some courts have granted motions to strike settlement-discussion allegations that violate Rule 408. *Polaris Indus. Inc. v. Arctic Cat Inc.*, 2016 WL 10518589, at *2 (D. Minn. May 31, 2016) (striking pleadings that described settlement negotiations); *Braman v. Woodfield Gardens Ass'n. Realcorp Investors I*, 715 F. Supp. 226, 230 (N.D. Ill. 1989) (finding that the underlying purpose of Rule 408 would be undermined if the court did not strike pleadings related to settlement negotiations). However, the Court's review of the case law indicates that, on balance, most courts have declined to strike such material from pleadings if the argument for doing so is only that it may not later be admissible at trial. *See, e.g., Ocean Garden Prod. Inc. v. Blessings Inc.*, 2019 WL 396873, at *1 (D. Ariz. Jan. 29, 2019) (holding that, given the disfavored status of motions to strike and uncertainties regarding the admissibility under Rule 408 of the material at issue, the contested pleadings would not be struck); *N. Face Apparel Corp. v. Williams Pharmacy, Inc.*, 2010 WL 546318, at *1–2 (E.D. Mo. Feb. 9, 2010); (finding it premature to strike settlement-negotiation allegations); *Halbrucker v. Waste Mgmt. of Wis.*, 2007 WL 3125276, at *1–2 (E.D. Wis. Oct. 24, 2007) (same); *McAndrews Law Offices v. Sch. Dist. of Phila.*, 2007 WL 515412, at *3 (E.D. Pa.

Feb. 9, 2007) (same); *Eppenger-Pollard v. Lock Joint Tube, Inc.*, 2005 WL 2216900, at *1–2 (N.D. Ind. Sept. 9, 2005) (same).

Based upon its review of the case law and the pleadings in this case, the Court will not strike the contested allegations. Rule 408 is a rule of evidence, not of pleading, and the allegations in Bushey's claims are not evidence. Further, it is too early in this litigation to determine exactly how Bushey intends to use the contested allegations, so it is not clear whether Rule 408 would bar such evidence. Finally, DWD and Dubbell do not argue that the settlement-negotiation allegations contain any redundant, immaterial, impertinent, or scandalous matter. Given the disfavored status of motions to strike and uncertainties regarding the admissibility under Rule 408 of the allegations at issue, the Court declines to strike the settlement-negotiation allegations.

### B. Motion to Dismiss

DWD and Dubbell also move to dismiss Bushey's claims for failure to state claims upon which relief may be granted. They make three arguments: (1) Bushey has failed to state cognizable claims for personal liability against Dubbell; (2) Bushey's breach-of-contract claims fail as a matter of law because the Agreement is an indefinite and unenforceable "agreement to agree"; and (3) Bushey has failed to allege the necessary elements of his promissory estoppel claims. Below, the Court takes up each of these arguments in turn.

#### 1. Bushey Has Sufficiently Alleged Dubbell's Personal Liability

DWD and Dubbell argue that Bushey's claims for breach of contract and promissory estoppel against Dubbell in his individual capacity fail because Dubbell was only acting in his capacity as the owner of a limited liability company when he executed

7

the Agreement. They argue that Bushey did not allege that Dubbell "acted individually or . . . beyond his scope as an agent of Pel-Freez" and therefore both claims against Dubbell should be dismissed. (Doc. 16, p. 5). Bushey responds that Dubbell signed the Agreement in his individual capacity and any argument that he signed it as a representative of Pel-Freez is a question of fact that must be resolved by a jury. (Doc. 15, p. 4).

In support of his argument, Dubbell cites to *First Community Bank v. Wootton New Holland, LLC*, 2017 WL 11285590 (E.D. Ark. Mar. 30, 2017). In *First Community Bank*, the plaintiff sued Wootton New Holland (a farm equipment dealer) and its agent, Capital Machinery. *Id.* at *1. One of the issues was whether the plaintiff had sufficiently alleged claims against Capital Machinery. The district court dismissed the claims against Capital Machinery because the plaintiff did not allege any liability against Capital Machinery independent of that alleged against its principal, Wootton New Holland, and indeed the complaint consistently alleged Wootton New Holland acted "by and through its manager" Capital Machinery. *Id.* at *6. The district court also noted that the plaintiff did "not allege that Capital Machinery agreed to liability independent of that of Wootton New Holland." *Id.*

The facts in this case are materially different from those in *First Community Bank*, and the Court finds that Bushey has sufficiently alleged that Dubbell acted in his individual capacity. Here, Bushey alleges that Dubbell was the owner and manager of Pel-Freez, which was organized as a limited liability company ("LLC"). At the outset, this appears to be a point in favor of Dubbell's argument, as the manager of an LLC is not liable for a debt, obligation, or liability of that company, *see* Ark. Code Ann. § 4-32-304, and the

8

manager of an LLC is treated as an agent of the LLC. Ark. Code Ann. §§ 4-32-401, 4-32-301. But an agent may be personally bound if the agent so agrees. *See McCullough v. Johnson*, 816 S.W.2d 886, 887 (Ark. 1991). That is exactly what Bushey alleges. He asserts that the Agreement was executed "[t]o memorialize the terms of Bushey's compensation for his role at Pel-Freez *and his agreement with Dubbell* . . . ." (Doc. 6, p. 7 (emphasis added)). The text of the Agreement does not contradict this allegation on its face, as Dubbell signed it without any explicit notation that he was doing so on behalf of Pel-Freez. (Doc. 6-1). Thus, Bushey makes plausible claims that Dubbell entered into the Agreement in his individual capacity. The parties' disagreement about the interpretation of the Agreement is better reserved for consideration at the summary judgment stage. Taking Bushey's allegations as true, the Court finds that Bushey has sufficiently alleged claims against Dubbell in his individual capacity.

### 2.  Bushey Has Sufficiently Alleged Breach of Contract Claims

DWD and Dubbell next argue that the Agreement is an "agreement to agree" that lacks the requisite definiteness to be enforceable under Arkansas law. (Doc. 16, pp. 6–12). Specifically, they point to terms of the Agreement which imply the parties would firm up their agreement in future negotiations. Such terms include the following language:

> In our recent discussions, we have agreed that a definitive Compensation Plan will be prepared and reviewed in January of each year. This Plan will be needed to define details of your responsibilities and authorities, my expectations of you and your team for providing timely specific reports, information, etc., and reaching clarity with regard to the many needed Compensation Plan terms to cover when possible future events, such as your resignation . . . .
>
> . . .

> The above A-G define our basic agreement for your ongoing compensation, with our both understanding that full definition to reside within the yet to be prepared Compensation Plan.

*Id.* at p. 10.  They also cite to multiple Arkansas precedents holding that agreements to agree lack definiteness and are unenforceable.

Bushey appears to concede that language in the Agreement about the forthcoming "Compensation Plan" was an "agreement to agree," but he argues that the Sale Benefit Clause is definite and that any "agreement to agree" did not extend to the Sale Benefit Clause.

Viewing Bushey's allegations as true, the Court declines to dismiss Bushey's claims for breach of contract.  Even if a contract is indefinite on its face, the parties, by their conduct, can enable a court to give substance to indefinite terms of a contract; therefore, the courts may look to the conduct of the parties to determine their intent.  *Welch v. Cooper,* 670 S.W.2d 454 (Ark. Ct. App. 1984).  Assuming for the sake of argument the Agreement is indefinite, Bushey has sufficiently alleged further conduct of the parties by which the Court could infer that the parties intended to be bound by the Agreement.  For example, Bushey alleges that he procured a buyer for Pel-Freez—the Agreement provides Bushey a five percent bonus if he referred a successful buyer—but Dubbell decided not to sell due to Pel-Freez's renewed success.  (Doc. 6, p. 8).  From this action, the Court could infer that Bushey believed he would be entitled to an additional benefit by referring a buyer to Pel-Freez, as set forth in the Agreement.  Further, there is no allegation that the parties entered into any additional written agreement, and from this fact the Court may plausibly infer that the parties believed the Agreement governed Bushey's employment.

In short, taking the allegations as true, the Court finds that, even if the Agreement is indefinite, Bushey has plausibly alleged that the parties proceeded as if the Agreement governed Bushey's employment. Thus, the Court concludes that Bushey has sufficiently alleged that the Agreement is enforceable. Additional fact discovery will determine whether Bushey's allegations are true.

### 3. Bushey Has Sufficiently Alleged Promissory Estoppel Claims

Finally, DWD and Dubbell argue that Bushey has failed to sufficiently plead his claims for promissory estoppel. They argue that if a contract speaks to the subject matter at issue, a claim sounding in promissory estoppel cannot apply. Alternatively, they argue that Bushey has not pleaded the essential elements of a claim for promissory estoppel. In response, Bushey argues that he has alleged the elements of his promissory estoppel claims and points out that these claims are brought in the alternative in case the Court holds that the Agreement is not an enforceable contract.

"To prove promissory estoppel, a plaintiff must show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; (3) the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice can be avoided only by enforcement of the promise." *Barrows/Thompson, LLC v. HB Ven II, LP*, 599 S.W.3d 637, 648 (Ark. Ct. App. 2020) (citing *Fairpark, LLC v. Healthcare Essentials*, 381 S.W.3d 852 (Ark. Ct. App. 2011)). "[P]romissory estoppel may be a basis for recovery only when formal contractual elements do not exist." *Id.* (citing *Taylor v. George*, 212 S.W.3d 17 (2005)).

The Court finds that Bushey has sufficiently pleaded his promissory estoppel claims. Bushey alleges that DWD and Dubbell promised to provide him with a sale benefit. He alleges that, based upon that promise, he acted as a turn-around specialist and revitalized Pel-Freez. He also asserts that DWD and Dubbell should have expected him to rely upon that promise, that his reliance was reasonable, and that enforcing this promise is the only way to avoid injustice. In the Court's view, Bushey has sufficiently alleged each element of his promissory estoppel claims. Further, Bushey is permitted under Rule 8(d) of the Federal Rules of Civil Procedure to bring these claims in the alternative to his breach-of-contract claims.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that DWD and Dubbell's Motion to Strike (Doc. 13) and Motion to Dismiss (Doc. 15) are **DENIED**.

**IT IS SO ORDERED** on this 28th day of September, 2020.

                TIMOTHY L. BROOKS
                UNITED STATES DISTRICT JUDGE